# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES CORMAN, ENERGY ALTERNATIVE STUDIES, INC. AND THE ENERGY ALTERNATIVE STUDIES INC. HEALTH AND WELFARE PLAN,<br>         Plaintiffs,<br><br>v.<br><br>THE NATIONWIDE LIFE INSURANCE COMPANY,<br>         Defendant. | CIVIL ACTION<br><br>NO. 17-3912 |

## MEMORANDUM OPINION

This dispute arises in the aftermath of a massive scheme to convert welfare benefit funds that was perpetrated by John Koresko and various associates. *See Perez v. Koresko*, 86 F. Supp. 3d 293 (E.D. Pa. 2015); *Solis v. Koresko*, 884 F. Supp. 2d 261 (E.D. Pa. 2012), *aff'd*, 646 F. App'x 230 (3d Cir. 2016). Plaintiffs' Complaint centers on an insurance policy issued by Defendant Nationwide Life Insurance Company ("Nationwide"). They allege that Nationwide violated various laws by allowing Koresko to raid the policy. Specifically, they allege that Nationwide: (1) breached its fiduciary duties and participated in prohibited transactions in violation of Section 1132(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"); (2) knowingly participated in fiduciary breaches and in prohibited transactions in violation of Section 1132(a)(3) of ERISA; (3) conducted the affairs of an enterprise through a pattern of racketeering activity in violation of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (4) violated Section 1962(d) by conspiring to violate Section 1962(c) of RICO.

Pending now are Nationwide's Motion to Dismiss and Plaintiffs' Motion for Partial Summary Judgment. In its Motion to Dismiss, Nationwide argues, among other things, that Plaintiffs' ERISA claims are time-barred, and that Plaintiffs do not allege sufficient facts to support their RICO claims. Plaintiffs oppose both these arguments, and further move for summary judgment on the ERISA claims.

For the reasons that follow, Nationwide's motion shall be granted in full, and Plaintiffs' motion shall be denied.

## I.  FACTS[1]

### A. Plaintiffs' Interactions with the Koresko Arrangement

Between 2002 and 2013, John Koresko and others operated a multiple employer welfare arrangement (the "Arrangement" or the "Koresko Arrangement") that allowed employers to purchase cash value life insurance policies and take a tax deduction for the premiums as a business expense. Koresko systematically converted and misused the assets of the participating welfare benefit plans. Because the Arrangement and Koresko's defalcations have already been

---

[1] These facts are drawn from the Complaint and from four additional documents. Two of those documents are attached to Nationwide's Motion to Dismiss, which are the "Plan Documents" that established EAS's Health Welfare Benefit Plan and the insurance policy (the "Policy") that insured Plaintiff James Corman and his wife Mary Corman's lives. Although on a motion to dismiss it is generally improper to consider extraneous documents, the Court may nevertheless consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[s]." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiffs do not dispute the authenticity of the attached documents, and each document is integral to Plaintiffs' claims. Therefore, the Policy and the Plan Documents will be considered.

The other two documents, referred to as the Verifications and Custodial Agreement, purported to delegate certain authority from a trustee to agents. Unlike the Plan Documents and the Policy, these documents are neither attached to the Complaint nor to the Motion to Dismiss. As a result, the Court can only assess the pieces of these documents quoted by Plaintiffs in the Complaint. However, reliance on these quoted portions does not convert a motion to dismiss into a motion for summary judgment. *See Alban v. BMW of N. Am.*, 2011 WL 900114, at *2 n.1 (D.N.J. Mar. 15, 2011) (citing *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Finally, it is important to note that the parties' Statements of Undisputed Material Facts and the Joint Appendix may only be considered on a motion for summary judgment. While Plaintiffs have indeed filed a Partial Motion for Summary Judgment, the Statements of Undisputed Material Facts and the Joint Appendix may nevertheless not be considered because the Court—before reaching the Motion for Partial Summary Judgment—concludes that Nationwide's Motion to Dismiss must be granted.

comprehensively recounted in *Perez v. Koresko, supra*, only the facets of the scheme relevant to the claims raised here will be described below.

The Arrangement was nominally run by PennMont, a corporation whose officers were John Koresko and his brother Lawrence. PennMont played a public-facing role in recruiting participants. It explained to prospective participants that in order to take advantage of the Arrangement's purported tax benefits, an employer needed to sign an adoption agreement that established the employer's own welfare benefit plan according to terms dictated by Koresko, and the employer also needed to agree to the terms pre-defined by Koresko. Employers then paid insurance premiums into a trust, and the trustee passed those payments on to insurance companies. The trustee, importantly, was named as the owner and beneficiary of the policies.

Plaintiff Energy Alternative Studies Inc. Health and Welfare Plan (the "EAS Plan") was a participating plan; Plaintiff Energy Alternative Studies was the sponsoring employer; and Plaintiff James Corman was a participant in the EAS Plan whose life was insured by a policy purchased through the trust and issued by Defendant Nationwide.

Plaintiffs joined the Koresko Arrangement in early 2000, at which time an insurance policy was purchased from Nationwide insuring the lives of Plaintiff James Corman and his wife Mary Corman. The Complaint alleges that Nationwide allowed a Koresko-related entity to change the owner and beneficiary from the EAS Plan to the Koreskos' REAL VEBA trust.[2] The Complaint suggests—although it does not explicitly state—that Community Trust Company ("CTC"), took over as the trustee at this point.

Over the following 12 years, the EAS Plan contributed $865,000 to CTC, which used the

---

[2] The Complaint does not specify which Koresko-related entity changed the Plan information.

money to pay premiums on the Policy. In 2009, Nationwide loaned a Koresko-related entity[3] $578,777.52 collateralized by the cash value that had accumulated in the policy. The loan has accrued $276,953 in interest, and has not been repaid.

Three months after the loan was made, Plaintiffs requested information from Nationwide and Koresko-related entities about the status of the policy, but they never received any meaningful response. Plaintiffs only learned of the 2009 loan sometime after September 2013 when Koresko was removed from his position of fiduciary authority, and they filed this lawsuit on August 31, 2017.

### B. The Key Documents

According to the Complaint, the relationships among these parties were governed by four documents: the Plan Documents, the insurance policy (the "Policy"), the Verifications, and the Custodial Agreement.

The Plan Documents established the EAS Plan, and stated that insurance policies purchased under the Plan and the cash value contained in those policies "shall be owned by the Trustee." The Plan Documents also granted wide-ranging authority to the trustee to control those policies:

> The Trustee may purchase Policies on each Participant. . . . The policy shall be a contract between the Trustee and the Insurer and shall reserve to the Trustee all rights, options and Benefits provided by the Policy and permitted by the Insurer, except that the right to name and change the Beneficiary shall be exercised . . . in writing pursuant to a power of attorney or other document.

The Policy, although it insured the Cormans' lives, made clear that it was "a legal contract between the Owner [the trustee of the Plan] and Nationwide," that "all rights in [the] Policy belong to [the Owner]," and that the Owner "may assign any or all rights under [the] Policy."

---

[3] The Complaint does not specify to which Koresko-related entity Nationwide issued the loan.

The last two documents that appear to play an important role are the "Verifications" and the "Custodial Agreement," both of which were purportedly executed by CTC. The Verifications designated Jeanne Bonney, a Koresko associate, as "Appointed Signator" to sign Arrangement-related Documents on behalf of CTC, and further stated:

> The trust empowers the trustee to exercise any and all rights associated with owning life insurance policies and the trustee can exercise these rights without the consent of the insured. These rights include but are not limited to: surrendering the policy, withdrawing policy values, borrowing against the policy, transferring ownership, and changing the beneficiary.

The Custodial Agreement designated the Koresko Law Firm as CTC's agent, and apparently also stated that the trustee had the same powers listed in the Verifications.

## II. LEGAL STANDARD

To overcome a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a complaint satisfies this standard, a court must first outline the required elements, then strip away legal conclusions from the complaint, and finally decide whether the well-pled factual allegations plausibly entitle the plaintiff to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## III. ANALYSIS

Plaintiffs make two sets of claims: those alleging liability under ERISA, and those alleging liability under RICO. The ERISA claims will be dismissed because they are time-barred. The RICO claims will be dismissed because Plaintiffs failed to sufficiently plead that Nationwide engaged in a "pattern of racketeering activity."

### A. ERISA Claims

Plaintiff filed this lawsuit on August 31, 2017. Ordinarily, ERISA actions must "be commenced . . . after the earlier of" either "six years after . . . the date of the last action which constituted a part of the breach or violation" or "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. Plaintiffs allege that the only action constituting a violation—the $578,777.52 loan—occurred on approximately August 26, 2009, but they contend they developed actual knowledge of the violation no earlier than September 2013. Therefore, to have complied with the standard statute of limitations, they needed to have filed this action by approximately August 26, 2015—more than two years before they did. Thus, absent anything more, their ERISA claims are time-barred.

However, the statute includes an exception: "[I]n the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." *Id.* In their briefing Plaintiffs do not contend that they satisfy the standard requirements, but instead focus on this "fraudulent concealment" exception. To wit, they claim that "PennMont and Nationwide took affirmative steps to hide their breach by refusing plaintiffs' requests for the status of the funds invested through the Policy." More specifically, Plaintiffs contend that they requested information from Nationwide and Koresko-related entities about the status of the policy, but they never received any meaningful response. Plaintiffs only learned of the 2009 loan sometime after September 2013 when Koresko was removed from his position of fiduciary authority.

Neither PennMont nor Nationwide triggered the exception here.

6

### i. PennMont

Fraudulent concealment "applies the federal common law discovery rule to ERISA breach of fiduciary duty claims," which the Third Circuit has repeatedly explained means that the exception may be invoked only "when a lawsuit has been delayed because *the defendant itself* has taken steps to hide its breach of fiduciary duty." *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1552 (3d Cir. 1996) (emphasis added); *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 788 (3d Cir. 2001) (quoting *Kurz*, 96 F.3d at 1552); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (same); *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000) (emphasis omitted) ("The plaintiff must show active misleading by the defendant[.]"). Because PennMont is not a defendant in this case, PennMont's refusal to turn over requested documents to Plaintiffs cannot affect the statute of limitations.[4]

### ii. Nationwide

Plaintiffs' argument that Nationwide itself triggered the exception is also foreclosed by binding Third Circuit precedent. ERISA's fraudulent concealment exception applies only when

---

[4] Plaintiffs, however, argue that "[w]hether the concealment . . . must have been engaged in by the specific defendant is an open question." But the only binding authority to which they cite is a footnote in *Davis v. Grusemeyer*, 996 F.2d 617 (3d Cir. 1993), which states:

> [A] third party may not be attributed to the named defendants for purposes of tolling the statute of limitations absent some special connection between the third party and the named defendant(s). Therefore, to state a claim of fraudulent concealment . . . based on [a third party]'s conduct, [the plaintiff] would have to describe a conspiracy to conceal . . . [the] racketeering activity in which [the third party] and the RICO defendants participated.

*Id.* at 624 n.13. At most, this footnote left the door open to the possibility that "some special connection" could allow a third party's fraudulent concealment to be attributed to a defendant. But that door was firmly closed three years later by the language in *Kurz*, which stated in no uncertain terms that the fraudulent concealment must be committed by "the defendant itself." 96 F.3d at 1552.

In any event, the *Davis* footnote is quintessential dictum; the opinion makes clear in the body text that "[t]he doctrine of fraudulent concealment does not come into play" based on the plaintiff's failure to show other elements of fraudulent concealment, and the footnote itself confirms that "amendment of the complaint to aver facts supporting these allegations [of a conspiracy to conceal] is unnecessary because, as we hold in the text, [the plaintiff]'s fraudulent concealment claim fails as a matter of law." *Davis*, 996 F.2d at 624 & n.13. In other words, *Davis* makes clear that the discussion is "not necessary to [the] ultimate holding" and therefore is "not binding upon future courts." *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013).

7

the defendant has taken "affirmative steps" to hide a breach. *Kurz*, 96 F.3d at 1552; *see also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 (3d Cir. 2001) ("[I]f all that a plaintiff can show is that a [defendant] failed to give him accurate advice . . . the fraud or concealment clause is inapplicable."); *Bulger*, 243 F.3d at 788 (internal quotation marks omitted) ("There must be actual concealment,—i.e., some trick or contrivance intended to exclude suspicion and prevent injury."). But Plaintiffs point to no such affirmative steps, instead alleging in their Complaint only that Nationwide "refus[ed] to provide any information."

Plaintiffs try to show affirmative steps in two ways. First, they explain that Nationwide refused to provide information when Plaintiffs asked for it. This fact does little to help Plaintiffs because, as Defendants note, the Policy "does not include any provisions permitting . . . Nationwide to share information with someone other than the policy owner," and although the Policy insured Plaintiff Corman, neither he nor any of his co-Plaintiffs own it.[5] Simply complying with the requirements of the contract does not rise to the level of a "trick or contrivance" to hide information from Plaintiffs.

Second, Plaintiffs reference *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.*, 93 F.3d 1171 (3d Cir. 1996), for the proposition that "circumstances known to the fiduciary can give rise to th[e] affirmative obligation [to disclose] even absent a request by the beneficiary." *Id.* at 1181. True enough; but Plaintiffs have not pleaded facts indicating that Nationwide was a fiduciary with respect to the decision to furnish information about the account to Plaintiffs. Under ERISA, an entity is a fiduciary if it is either named as such in the plan, 29 U.S.C. § 1102(a)(2), or to the extent it "exercises any discretionary authority or discretionary control respecting management of [the] plan," *id.* § 1002(21)(A). *See*

---

[5] In fact, the Policy indicates that "[t]he Owner has *all* rights under this Policy," (emphasis added), and that it is "a legal contract between the Owner . . . and Nationwide," mentioning the legal rights of no other party.

8

*Srein v. Frankford Trust Co.*, 323 F.3d 214, 220-21 (3d Cir. 2003). Plaintiffs do not assert that Nationwide was named as a fiduciary in the plan. And Plaintiffs fail to plead facts suggesting that Nationwide exercised any "discretionary authority or discretionary control" respecting management of information about the Policy.[6] As a result, *Glaziers and Glassworkers* does not indicate that Nationwide had a duty to respond to Plaintiffs' request, and therefore does not help show that Nationwide took any "affirmative steps" to hide a breach that might have triggered the "fraudulent concealment" exception to the statute of limitations.

Because Plaintiffs' "fraudulent concealment" argument fails, and because Plaintiffs do not argue that they otherwise fall within ERISA's statute of limitations, their ERISA claims must be dismissed.

### B. RICO Claims

Plaintiffs contend that Nationwide is both directly and vicariously liable under RICO. The arguments relating to direct liability will be rejected because they failed to sufficiently plead that Nationwide engaged in a "pattern of racketeering activity." The arguments relating to vicarious liability will be rejected because Plaintiffs failed to plead this theory of liability in the Complaint.

---

[6] Plaintiffs do argue in their briefing that Nationwide had fiduciary control over the cash value of the Plan—and perhaps by implication, that they also had control over information relating to the plan. They assert that (1) "Nationwide knows it did not pay out the loan funds to [CTC]" because "[CTC] did not exist" at the time the loan was made; (2) Nationwide actually "paid the loan proceeds to the 'Single Employer Welfare Plan C O Pennmont Benefit SRVC,'"; and (3) "Nationwide did not even inform [CTC] or its successor, F&M, that the loan was requested or made." That is to say, Plaintiffs are arguing that Nationwide exercised discretionary control by issuing a loan to a stranger to the plan.

Even if these facts were true, and even if they would show fiduciary control, Plaintiffs face a threshold problem: They have not pleaded these facts in their Complaint. In their briefing, they do not direct the Court to any specific paragraph in the Complaint in support of these facts, and even on the Court's independent review, there do not appear to be facts pleaded that support these claims. In fact, the Complaint in some instances seems to contradict the argument in the briefing. The Complaint states that "[f]rom April 15, 2002 until January 2010, CTC served as the trustee," which encompasses the time—approximately August 26, 2009—when the improper loan was purportedly made; this suggests that CTC did indeed exist at the time of the loan. In short, Plaintiffs have not pointed to facts pleaded in the Complaint that support the legal conclusion that Nationwide exercised discretionary control over the relevant aspects of the Plan.

9

### i. Direct Liability

To adequately plead a violation of 18 U.S.C. § 1962(c), Plaintiffs must allege "(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity." *United States v. Parise*, 159 F.3d 790, 794 (3d Cir. 1998) (internal quotation marks omitted). And to plead a violation of 18 U.S.C. § 1962(d), which covers conspiracies to violate RICO's substantive provisions (18 U.S.C. §§ 1962(a)-(c)), Plaintiffs must allege "an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010). (internal quotation marks omitted).

A "pattern of racketeering activity," the key piece of the fourth element of a Section 1962(c) violation, is defined by statute as "requir[ing] at least two acts of racketeering activity." 18 U.S.C. § 1961(5). And "racketeering activity," also defined by statute, includes embezzlement crimes under 18 U.S.C. § 664. *See id.* § 1961(1). In that light, Plaintiffs allege that Nationwide engaged in "at least 7 separate but related predicate acts of embezzlement" under 18 U.S.C. § 664, by loaning money to Koresko that was secured by the cash value of insurance policies.

Nationwide's principal response is that issuing these loans could not have been embezzlement because the Policy "explicitly permits the owner to borrow against cash value," and therefore that Nationwide could not have committed embezzlement simply by complying with the terms of the Policy. Nationwide notes that embezzlement under Section 664 requires, at the very least, "(1) the unauthorized (2) taking or appropriation (3) of benefit plan funds,"

10

*Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 508 (E.D. Pa. 2001) (citing *United States v. Andreen*, 628 F.2d 1236, 1241 (9th Cir. 1980)), and argues that the loan could neither be "unauthorized" nor a "taking" if it was explicitly permitted by the terms of the Policy—and indeed, if Nationwide was *required* by the terms of the Policy to honor the loan request.

Plaintiffs reply by stating that the loans "were not made to Community Trust Company [the trustee and owner of the Policy] and . . . the claimed authorization was facially bogus," and that Nationwide's "points are premised . . . on the false premise that the loan was requested by and paid to the policy owner." Embedded in this argument appears to be the allegation—although never made directly in the Complaint—that the loans were impermissible because they were requested by either Jeanne Bonney or by the Koresko Law Firm, rather than by Community Trust Company (CTC).[7]

These assertions are unpersuasive. As a preliminary matter, Plaintiffs provide no citation to the Complaint to support their argument. And even upon the Court's independent review of the Complaint, discussed below, there appears to be no basis for Plaintiffs' assertions: The Complaint does not contain factual allegations that Nationwide engaged in an "unauthorized taking."

The Complaint states that CTC was "the trustee as of April 15, 2002," and that the trustee was the owner of the Policy. It also states that CTC "executed" or "entered" both the Verifications and the Custodial Agreement, which designated Jeanne Bonney and the Koresko Law Firm as CTC's "Appointed Signator" and agent, respectively. The Verifications and the Custodial Agreement also "certified" that the trustee—that is, CTC—could "exercise any and all rights associated with owning life insurance policies," and that those rights "include but are not

---

[7] It is also conceivable that Plaintiffs mean to suggest that CTC was not the true owner of the Policy because Nationwide wrongfully allowed Koresko to change the owner and beneficiary of the Policy. But neither the Complaint nor the briefing can be fairly read to make this point.

limited to: surrendering the policy, withdrawing policy values, borrowing against the policy, transferring ownership, and changing the beneficiary." The Complaint then asserts the legal conclusion that "the trust documents . . . did not give the trustee any such power."

Assuming that the Complaint means to allege that Nationwide improperly issued loans at the request of either Bonney or the Koresko Law Firm, the dispositive issues—on which Plaintiffs' briefing does not shed any light—become (1) whether the Plan Documents grant the trustee the powers represented by CTC in the Verifications and in the Custodial Agreement (most critically, whether they grant the power to borrow against the Policy), and (2) whether CTC was within its rights to assign "Signator" authority to Bonney and agency power to the Koresko Law Firm. If the Plan Documents do grant those powers, and if the assignments were permissible, then Plaintiff will have alleged no basis on which Nationwide could have refused the loan request.

As to the first question, the powers represented in the Verifications and Custodial Agreement, Nationwide directs the Court's attention to the Plan Documents themselves, which expressly state that any policy purchased under the Plan, along with the cash value contained in those policies, "shall be owned by the Trustee," and moreover that those policies "shall be a contract between the Trustee and the Insurer and shall reserve to the Trustee all rights, options and Benefits." The Policy also supports Nationwide's argument, making clear that it "is a legal contract between the Owner (you, your) and Nationwide Life Insurance Company (we, our, us, the Company)," and that "[w]hile either Insured is living, all rights in your Policy belong to you." Most importantly, the Policy explicitly provides the owner authority to "request a loan at any time while your Policy is in force," to be "made upon the sole security of the Policy and proper assignment of your Policy to us."

Read together, the Plan Documents and the Policy demonstrate that CTC, as the Plan's trustee, owned the Policy, and at least by the terms of these documents the trustee could exercise almost unlimited control over Policy assets and could request loans collateralized by the Policy. Plaintiffs have pointed to no reason to believe that "the trust documents . . . did not give the trustee" the powers listed in the Verifications and Custodial Agreement.

As to the second question, CTC's assignment of "Signator" or agency power, the Policy again proves helpful. It states that "[w]hile either Insured is living, you may assign any or all rights under your Policy," subject only to the condition that the assignment "is in a written form acceptable to us and is recorded at our Home Office." Moreover, the parties have not pointed to any language, either in the Plan or in the Policy that suggests designating a "Signator" or an agent falls outside the scope of the broad powers of the trustee.

In sum, the Complaint, the Plan Documents, and the Policy do not provide a basis for Plaintiffs' arguments that loans "were not made to [CTC]" and that the "authorization was facially bogus." Rather, these documents indicate that CTC had wide-ranging authority, as the owner of the Policy, to take out loans, designate agents, assign rights, and more. Plaintiffs' flat assertions to the contrary offer no reason to think otherwise. As a result, Plaintiffs have not adequately pleaded that Nationwide engaged in any "unauthorized . . . taking," *Mehling*, 163 F. Supp. 2d at 508, in violation of 18 U.S.C. § 664, which in turn means that Plaintiffs have not pleaded the "predicate acts" required to show a "pattern of racketeering activity" under 18 U.S.C. §§ 1962(c) and (d).[8] Counts III and IV will therefore be dismissed.

---

[8] As noted *infra* section III.B.ii, the Complaint also alleges that Nationwide is responsible for Koresko's own predicate acts under theories of *respondeat superior* and agency. However, these are "legal conclusions" that alone cannot maintain a complaint. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 n.55 (3d Cir. 2016) (internal quotation marks omitted).

### ii. Vicarious Liability

Plaintiffs' Opposition Brief asserts that Nationwide failed to challenge the claim that Nationwide is vicariously liable under RICO. Nationwide responds that the Complaint did not allege that Nationwide "was vicariously liable under RICO," but rather that it only "was vicariously liable for the predicate acts of embezzlement committed by Koresko," and that liability for the predicate acts alone does not create liability under RICO.

A complaint must "put [defendants] on notice of the nature of the . . . claim." *Brokerage Antitrust*, 618 F.3d at 320 n.18. Although the Complaint must be construed "in the light most favorable to the plaintiff," it is simply not a "reasonable reading," *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002), of the Complaint that Plaintiffs asserted Nationwide's vicarious liability for Koresko's own RICO violations.

Plaintiffs argue that the allegation of vicarious liability for a RICO violation can be found in Paragraph 109, which reads in full:

> 109. The numerous violations of 18 U.S.C. 664 committed by Koresko *et al.* and the hundreds of deceptive mailings and emails sent by Koresko *et al.* in furtherance of the scheme to defraud the plan sponsors, the plans themselves, the plan participants, and the plan beneficiaries are also attributable and imputed to Nationwide under principles of agency and *respondeat superior.*

This paragraph only alleges that Nationwide is liable for the "predicate acts" that indicate a "pattern of racketeering activity" (that is, the violations of Section 664) based on a theory of *respondeat superior*.[9] It says nothing about liability for a RICO violation based on *respondeat superior*. Nationwide did not have notice that Plaintiffs intended to assert a theory of vicarious liability under RICO.

As a result, Plaintiffs failed to plead vicarious liability in the Complaint.

---

[9] It is clear that the Paragraph refers to "predicate acts" because it addresses the elements of a "predicate act" rather than the elements of a RICO violation.

14

## IV. CONCLUSION

For the foregoing reasons, Nationwide's Motion to Dismiss will be granted in full, and Plaintiffs' Motion for Partial Summary Judgment will be denied in full.

An appropriate order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone**

**‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾**

**Date: September 27, 2018**            **WENDY BEETLESTONE, J.**